IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACI A. WOODS, | ) | CASE NO. 1:12 CV 674 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action by Staci A. Woods seeking judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] Pursuant to my initial order,[3] the Commissioner has answered[4] and filed the transcript of the administrative proceedings,[5] and the plaintiff has filed her fact sheet.[6] As set forth in my procedural order,[7] the parties have

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Donald C. Nugent in a non-document entry dated March 19, 2012.

[2] ECF # 1.

[3] ECF # 6.

[4] ECF # 11.

[5] ECF # 12.

[6] ECF # 13.

[7] ECF # 14.

briefed their positions[8] and filed their supplemental fact charts.[9] Because the recommended resolution may be determined without an oral hearing, the matter is now ready for adjudication. For the reasons that follow, I will recommend finding that the decision of the Commissioner is not supported by substantial evidence and so the matter must be remanded.

## Facts

### A.    Background

Wood, who was 34 years old at the time of the hearing,[10] lives with her husband and five children.[11] She has a GED diploma and completed two years of college.[12] The Administrative Law Judge ("ALJ") found that she had past relevant work experience as a nurse's aid, cashier, and clerical/receptionist.[13] She alleged a disability onset date of June, 2006, claiming knee and back pain, carpal tunnel syndrome, degenerative disc disease, and depression.[14]

------

[8] ECF # 15 ( brief); ECF # 20 (Commissioner's brief).

[9] ECF # 15 (Woods's chart); ECF # 20, Attachment (Commissioner's chart).

[10] Transcript ("Tr.") at 32.

[11] *Id.*

[12] ECF # 18 at 2 (citing record).

[13] Tr. at 32.

[14] ECF # 18 at 2 (citing record).

**B.      Decision of the ALJ**

The ALJ, whose decision became the final decision of the Commissioner, found that Woods had severe impairments consisting of obesity, fibromyalgia, lumbar strain, degenerative disc disease, carpal tunnel syndrome and affective disorder, variously diagnosed as depressive disorder not otherwise specified, major depression and bipolar affective disorder.[15] The ALJ then made the following finding regarding Woods's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), that is, she can lift, carry push and pull about 10 pounds frequently and 20 pounds occasionally, and in an 8-hour workday with normal breaks she can sit about 6 hours and stand and/or walk about 6 hours. Additionally, however, she is limited to unskilled work that can be learned in thirty days or less, and that involves no more than superficial interaction with the public and co-workers.[16]

The ALJ decided that this residual functional capacity precluded Woods from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[15] Tr. at 24.

[16] *Id.* at 26.

[17] *Id.* at 32.

determined that a significant number of jobs existed locally and nationally that Woods could

perform.[18] The ALJ, therefore, found Woods not under a disability.[19]

## C.    Issues on judicial review

Woods asks for judicial review and reversal of the Commissioner's decision on the

ground that it does not have the support of substantial evidence in the administrative record.

Specifically, Woods presents the following eight issues for decision on judicial review:

- Did the decision err by failing to include any manipulative limitations in the RFC finding and holding that Woods could perform occupations that require repetitive, frequent hand use, while correctly finding Woods's carpal tunnel syndrome "severe" at step two?

- Did the decision err by finding moderate difficulties in "concentration, persistence, or pace," while failing to include any such limitation in the RFC?

- Did the decision err by finding moderate difficulties in social functioning, yet restricting the RFC only to "superficial interactions," which the ALJ allowed the Vocational Expert to define as eliminating only high-skill interactions such as negotiating and supervising?

- Did the decision err by failing to give good reasons for overruling the "marked" limitations stated by the treating psychiatrist Dr. Ahn, since ups and downs are to be expected in bipolar disorder?

- Did the decision err by failing to give good reasons for overruling the limitation to less than sedentary work reported by the claimant's treating physician Dr. Aldoori, where a reason given was that the doctor noted "only tenderness at trigger points" in connection with fibromyalgia?

---

[18] *Id.* at 33.

[19] *Id.* at 33-34.

-4-

- Did the decision err by evaluating the claimant's daily activities using an improper legal standard ("reasonable certainty"), speculation, and mis-characterization?

- Did the decision err by mentioning but failing to evaluate the report of the agency's examining psychologist, Dr. Smith, that the claimant was limited to following one-to-two step instructions, where the occupations cited by the Vocational Expert are shown in the Dictionary of Occupational Titles as inconsistent with that restriction?

- Did the decision err in evaluating the credibility of the claimant's symptoms, misstating the rule as requiring consistency with "objective medical evidence" and reverse-engineering the finding about credibility of claimant's symptoms ("not credible to the extent that they are inconsistent with the above residual functional capacity assessment")?[20]

## Analysis

### A.    Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[20] ECF # 13 at 2-3.

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**B. Treating physician rule and the good reasons requirement**

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-6-

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting

---

[24] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[25] *Id.*

[26] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

[27] 20 C.F.R. §§ 416.927(e)(1) and (3).

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a

---

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 416.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[40]  Second, the ALJ must identify for the record evidence supporting that finding."[41]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[42]

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Wilson*, 378 F.3d at 546.

[41] *Id.*

[42] *Id.*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[43] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[44] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers*,[45] *Blakley*,[46] and *Hensley v. Astrue*.[47]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[48] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[49] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.926(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.926(c)(2)(i)-(ii), (3)-(6).[50] The treating source's non-controlling status

---

[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[44] *Id.* at 375-76.

[45] *Rogers*, 486 F.3d at 242.

[46] *Blakley*, 581 F.3d at 406-07.

[47] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[51]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[52] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[53] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[54] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[55] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[56]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[57]

---

[51] *Rogers*, 486 F.3d at 242.

[52] *Gayheart*, 710 F.3d at 376.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

**C.      Application of standard – substantial evidence does not support the findings of the Commissioner.**

Initially, I address the issues relating to the ALJ's treatment of the opinions of Dr. Byong Ahn, a treating psychiatrist, and Dr. Dhia Aldoori, a treating internist. As noted above, the Sixth Circuit in *Gayheart* recently emphasized that an ALJ's handling of a treating source's opinion must proceed in two steps: (1) a determination of whether such an opinion is entitled to controlling weight, and then, if it is not to be given controlling weight; and (2) an assessment of what particular weight to give that opinion, with good reasons being given for the weight chosen. *Gayheart* teaches that an ALJ may not collapse these two distinct steps into one by merely discussing reasons for the assignment of lesser weight without first clearly determining whether the opinion should receive controlling weight.[58]

*1.      Dr. Aldoori*

As to Dr. Aldoori, a treating physician, the ALJ initially gave no weight to Dr. Aldoori's opinion that Woods would be "unemployable" for a period of twelve months or more, noting that such an opinion involves consideration of vocational issues that are beyond the professional competence of Dr. Aldoori and deal with an ultimate question reserved to the Commissioner.[59] As stated, the decision of the ALJ here is correct insofar as it rests on these two grounds and concerns simply the legal issue of whether Woods meets the standard for being disabled.

---

[58] *Id.*

[59] Tr. at 28.

But, the balance of the ALJ's analysis of Dr. Aldoori's opinion does not meet the standard of *Gayheart*. Although, as noted by the ALJ, Dr. Aldoori qualifies as a treating source by reason of being Woods's own physician who had an ongoing relationship with Woods over multiple visits,[60] the ALJ never directly acknowledges that Dr. Aldoori is a treating source whose opinions must be analyzed accordingly but, rather, implicitly seeks to discredit those opinions from the onset by stating that "Dr. Aldoori saw the claimant on only three occasions."[61]

Thus, the ALJ here evades the opening issue of a treating source analysis – whether or not the source's opinion should receive controlling weight – by insinuating that conducting only three examinations somehow disqualifies Dr. Aldoori *ab initio* from being considered as a treating source.[62]

Further, the ALJ also merely insinuates, and never actually establishes, that Dr. Aldoori's opinion as relates to fibromyalgia must somehow be entitled to less than

---

[60] *See*, 20 C.F.R. § 416.902; *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing regulations).

[61] Tr. at 29.

[62] The length of the treating relationship is a factor to be considered in the second stage of analysis, or only after a determination is made not to accord controlling weight to the opinion of a treating source. *Gayheart*, 710 F.3d at 376. As *Gayheart* teaches, the first step involves asking just two questions: (1) if the opinion of the treating source is well-supported by clinical and laboratory diagnostic techniques, and (2) if it is not inconsistent with other substantial evidence in the record. I note further that the Commissioner in his brief concedes that "seeing a claimant three times probably establishes [the existence of] a treatment relationship." ECF # 18 at 15-16.

-13-

controlling weight because "his examinations noted only tenderness at trigger points."[63] Again, this is analysis purely by inference. The plain import of the ALJ's sentence is that it must be self-evident that notations of trigger point tenderness are somehow incomplete for any meaningful diagnostic purposes, but the ALJ does not directly say this. In fact, if the ALJ had set forth the clinical tests for fibromyalgia, it would have been readily apparent that tenderness or pain at trigger points can be the basis for a diagnosis of fibromyalgia.[64]

In sum, as to the medical opinions of Dr. Aldoori, the ALJ did not follow the procedural rules applicable to analyzing treating source opinions by collapsing the two steps set forth in *Gayheart* into a single step. The brief, single sentence observation that Dr. Aldoori's opinions are inconsistent with his treatment notes[65] goes, insofar as it has value, to the second step of the treating source analysis, which, as Gayheart explicitly stated, "is properly applied only after the ALJ has determined that the treating source opinion will not be given controlling weight."[66]

**2. *Dr. Ahn***

Similarly, the ALJ here never began consideration of the opinions of Dr. Ahn by clearly stating that he is a treating source. As such, his opinions should receive controlling weight if they are well-supported by clinical or laboratory techniques and otherwise not

---

[63] Tr. at 29.

[64] *See*, *Rogers*, 486 F.3d at 243.

[65] Tr. at 29.

[66] *Gayheart*, 710 F.3d at 376.

inconsistent with other substantial evidence of record. The ALJ did not conduct that analysis here. Rather, as with Dr. Aldoori, the ALJ skips over the first step of the analysis to proceed directly to the second step – a determination of what level of weight to give by evaluating how consistent the opinion is with the details of the treatment notes.

## Conclusion

Thus, for the reasons stated, and consistent with the Sixth Circuit's instructions in *Gayheart*, I recommend that the decision of the Commissioner denying Woods disability insurance benefits and supplemental security income be reversed and the case remanded so that the opinions of treating sources Dr. Aldoori and Dr. Ahn may be appropriately considered.


Dated: July 10, 2013                                        s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[67]

---

[67] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-15-