UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STACI A. WOODS, | ) | CASE NO. 1:12 CV 674 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge William H. Baughman, Jr.. (ECF #21). Timely objections to the Magistrate's Report and Recommendation were filed by the Defendant. (ECF # 22), and the Plaintiff filed a Response to the Defendant's Objections. (ECF # 23). The Court has fully reviewed the Report and Recommendation, the objections and responses filed by the parties, and all of the applicable law. The Court finds that the objections raised by the Defendant have merit, and, therefore, declines to adopt the Report and Recommendation of the Magistrate Judge.

**PROCEDURAL HISTORY/STANDARD OF REVIEW**

The Magistrate's Report and Recommendation accurately sets forth a short summary of the factual background and procedural history of this action, outlines the issues raised by the Plaintiff, and sets forth the proper legal standards applicable to the review of a denial of social security benefits.  These sections of the Report and Recommendation, are, therefore, adopted as written.

The Report and Recommendation addressed only one of the issues raised on appeal: the ALJ's failure to give controlling weight to the opinions of the Plaintiff's treating physicians. Having found that the ALJ did not fully articulate his reasons for devaluing the treating physician's opinions, Magistrate Baughman recommended that the case be remanded, and found no need to address the other issues raised by Plaintiff in her appeal of the Commissioner's final decision.

ANALYSIS

Although Ms. Woods has attempted to frame eight separate issues for determination on judicial review, the Court is limited to addressing two distinct issues: (1)whether the ALJ applied the correct legal standards;  and, (2) whether there is substantial evidence in the record to support his findings.  42 U.S.C. § 405(g); *see, Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). This deferential standard requires the Court to affirm the agency's decision when there is substantial evidence in support of the ALJ's findings and inferences, and he has applied the correct legal standards. *See, Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir. 2007); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).   "[T]he findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This is true even if there may be bits of evidence that could be viewed as inconsistent with those findings, or even when there may also be substantial evidence supporting a different conclusion all together. *See, Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989); *Key*, 109 F.3d at 273.

I. Legal Standards

Ms. Woods sought supplemental security income and disability insurance benefits for a period of disability beginning in June of 2006. The claims were initially denied on December 6, 2007, and upon reconsideration in April of 2008. (ECF #12, pg. 27). She then requested a hearing, which was held in March of 2010. The ALJ found that Ms. Woods had not been under a disability within the meaning of the Social Security Act from June 30, 2006 through the date of the decision. (ECF #12, pg. 27). The denial of benefits was issued in April of 2010. (ECF #12, pg. 24).

Ms. Woods requested review by the Appeals Council in July of 2010, which request was denied in October of 2011. (ECF #12, pg. 16, 23). On November 7, 2011 the Social Security Administration notified Ms. Woods that they had reconsidered her request, and that they would review the denial of benefits. (ECF #12, pg. 15). On review, the Appeals Council upheld the ALJ's decision, finding that the "Administrative Law Judge fully considered and evaluated the evidence and reached the appropriate conclusion on the issues." (ECF #12, pg. 7).

In making his determination, the ALJ followed the five step sequential evaluation process required by 20 CFR 404.1520(a) and 416.920(a). In step one, the ALJ found that the claimant has

not engaged in substantial gainful activity since June 30, 2006. This decision has not been challenged. (ECF #12, pg. 29). In step two, the ALJ found that the claimant has the following severe impairments that significantly limit her ability to perform basic work related activities: obesity, fibromyalgia, lumbar strain, degenerative disc disease, carpal tunnel syndrome, affective disorder (variously diagnosed as depressive disorder not otherwise specified), major depression and bipolar affective disorder. This finding has not been challenged. (ECF #12, pg. 29, 30). Under step three, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (ECF #12, pg. 30).

In step four the ALJ must determine whether the claimant has the ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, including those impairments that are not "severe." This finding is known as the "residual functional capacity." Once the "residual functional capacity" of a claimant is determined, the ALJ must assess whether that capacity is sufficient to allow the claimant to perform her past relevant work. The ALJ considered and applied all of the proper legal standards required under 20 C.F.R. 404.1527, 404.1529, 416.927 and 416.929, as well social security regulations 96-4p, 96-2p, 96-5p, 96-6p, and 06-3, in his determination of Ms. Wood's residual functional capacity. (ECF #12, pg. 31). Further, the ALJ applied the correct two step analysis in considering the claimant's symptoms, determining first whether there exist physical or mental impairments, that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and that could reasonably be expected to produce the claimant's pain or other symptoms. See, 20 C.F.R. §§ 404.1529(a), 416.929(a); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The

ALJ accepted, based on evidence submitted by Ms. Woods, that such impairments did exist.  Once impairment was shown, the ALJ was required to, and did evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit her functioning.  See, 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, he applied the appropriate legal test to this determination by looking first for objective medical evidence that would substantiate the intensity, persistence, and limiting effects of the claimant's symptoms, and by evaluating the credibility of claimant statements and medical opinions where objective medical evidence was absent or insufficient to support such statements and opinions.

When evaluating the claimant's residual functioning capacity, and all of the relevant factors that go into that determination, the ALJ also applied the proper legal standard to the evaluation of Ms. Wood's treating physician's reports and opinions.  In finding otherwise, the Magistrate's Report and Recommendation did not appropriately apply the correct standard of deference to the Administrative Law Judge's factual findings, nor did it give full credit to the depth of explanation provided by the ALJ in support of his findings.   In determining whether there is objective medical evidence to support either the existence of an impairment, or the degree to which that impairment affects the residual functioning capacity of the claimant due to intensity, persistence, or other limiting effects, the social security regulations dictate that the opinions of treating sources should be given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence in the case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, treating source opinions as to the ultimate question of legal disability are entitled to no deference under this regulation or otherwise.  20 C.F.R. §§ 416.927(e)(1) and (3).

If an ALJ does not believe a treating source opinion is entitled to controlling weight, he must give good reason for discounting that opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Good reason is established when the ALJ (1) states that the medical opinion is not supported by medically acceptable clinical and laboratory techniques *or* is inconsistent with other evidence in the case record; (2) identifies evidence to support such a finding ; and, (3) explains the application of factors listed in 20 C.F.R. § 404.1527(d)(2) to determine what weight should be accorded to the opinion. The Magistrate's Report and Recommendation argues that the ALJ in this case never satisfied the first two requirements for establishing good reason to discount a treating source's opinion, and, in fact, never recognized them as treating sources. This Court disagrees.

First, although the ALJ did not specifically label them as "treating sources," he clearly accepted Dr. Aldoori and Dr. Ahn as such. He reviewed their opinions first and in greater depth than the opinions of other physicians and mental health professionals. In addition, after addressing the opinions of just these two doctors, he grouped the other opinions into a separate and distinct category. ("The undersigned has also considered the opinions of physicians and mental health processionals who examined the claimant or reviewed her case file at the request of the Bureau of Disability Determination (BDD)"). Further he acknowledged these doctors as treating physicians when he noted that Ms. Woods had seen Dr. Aldoori three times, when he stated that Dr. Ahn was Ms. Woods' psychiatrist, and when he provided the detailed reasons for discounting their opinions, which would be unnecessary had they not been treating sources. It appears clear based on the record that the ALJ knew these doctors were treating sources, and that he treated them as such.

Further, the ALJ fully accepted the opinions of both treating sources as to the establishment of Ms. Woods' claimed impairments, and accepted that these impairments could reasonably be

6

expected to cause the alleged symptoms she had reported. The only portion of their opinions that he did not accept as controlling were the opinions relating to the intensity, persistence, and limiting effects of these symptoms.

Dr. Aldoori's opinions were submitted in connection with his diagnosis of Ms. Woods' fibromyalgia. The ALJ specifically found that Dr. Aldoori's opinions as to the claimant's exertional and postural and manipulative limitations are not supported by his treatment notes or the evidence as a whole. This satisfies the first requirement in a proper statement of "good reason" to discount Dr. Aldoori's opinions as to the functional limitations imposed by Ms. Woods' impairments, as it indicates there is no evidence in the record that these opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques (not supported by treatment notes), and that they are inconsistent with the record (not supported by the evidence as a whole). Further, even if the ALJ had not specifically indicated that Dr. Aldoori's opinion did not meet the criteria to be controlling, the record as a whole shows no indication that there were any medically accepted clinical or laboratory techniques conducted that would provide support for the weight limitations, the standing/walking limitations, or the bending and repetitive foot movement limitations set forth in the report. Dr. Aldoori cites no objective medical evidence, testing or diagnosis that would support these limitations and none are included in his notes, or the reports of the other examining doctors. The only information offered by Dr. Aldoori in support of these limitations is a diagnosis of fibromyalgia with diffuse tender points, pain, fatigue, and insomnia. There is no description of the intensity of pain or tenderness, nor is there any evidence relating to the persistence or actual limitations suffered as a result of these symptoms. The ALJ accepted the fibromyalgia diagnosis, and accepted that this diagnosis could account for the symptoms suffered

by Ms. Woods.[1] However, he found no basis in the evidence for the strict limitations proposed by Dr. Aldoori even assuming this diagnosis was correct.

The ALJ cited specific evidence in the record that counters Dr. Aldoori's opinions, including Dr. Aldoori's own treatment notes. He pointed out that Dr. Aldoori's treatment notes found that Ms. Woods' coordination, muscle strength, and musculoskelatal movement were all normal, that she walked daily for exercise, and that she appeared comfortable during his observations. (ECF #12, pg. 33-34). These findings belie the limitations he suggested for standing/walking, pushing/pulling, and lifting restrictions. Further, the ALJ set forth in great detail the objective medical evidence that supported Ms. Woods' claims for certain limitations, none of which rise to the level of limitation suggested by Dr. Aldoori. (ECF #12, pg.33). He also outlined substantial evidence indicating that Ms. Woods is not physically restricted in her ability to stand or ambulate, and has no abnormalities of motor strength or gait. (ECF #12, pg. 33). These explanations by the ALJ more than sufficiently set forth the evidence required to support his finding that Dr. Aldoori's limitations opinions do not merit controlling weight. Therefore, this Court finds that not only does the record show substantial evidence to support the ALJ's treatment of Dr. Aldoori's opinion as less than controlling, but that he articulated all of the necessary information required to establish good reason for giving those opinions less than controlling weight under the requirements set forth in *Wilson*.

With regard to the opinion offered by Ms. Woods' psychiatrist, Dr. Ahn, the ALJ also found

---

[1] Despite the arguments of the Magistrate and the Plaintiff that the ALJ discounted the diagnosis of fibromyalgia based on the symptom of "diffuse tender points," the ALJ actually accepted the diagnosis and adopted it as part of Ms. Woods' impairment. This has no bearing, however, on whether the limitations imposed by her impairment rise to the level of a "disability" that makes her unemployable.

that the opined limitations allegedly imposed by Ms. Woods' psychiatric impairments did not deserve controlling weight.   As with Dr. Aldoori, the ALJ indicated that Dr. Ahn's opinions relative to functional limitations "are inconsistent with his treatment notes and the evidence as a whole."  This satisfies the first requirement in a proper statement of "good reason" to discount Dr. Ahn's opinions as to the functional limitations imposed by Ms. Woods' impairments, as it indicates there is no evidence in the record that these opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques (not supported by treatment notes), and that they are inconsistent with the record (not supported by the evidence as a whole).   Only one is required under *Wilson* to indicate good reason to diminish reliance on a treating source's opinion.

In addition, the ALJ set forth very specific evidence to support his finding that Dr. Ahn's opinion on limitations was inconsistent with the record.  (ECF #12, pg. 35).  He set forth multiple examples of Ms. Woods' own testimony regarding activity levels that contradicted the limitations suggested by Dr. Ahn.  (ECF #12, pg. 35).  He also referenced multiple notations in Dr. Ahn's treatment notes that contradict the need for the limitations suggested in his opinion.  (ECF #12, pg. 35).[2]  With regard to limitations related to decreased concentration , persistence, and pace, the ALJ accepted that she had moderate difficulties in these areas based on her complaints to health care providers, he did not accept Dr. Ahn's opinion that these limitations are "marked" in part because Ms. Woods demonstrated some ability in these areas during the proceedings associated with this case, and in part because "clinical testing indicated no concentration deficits or was not conducted." (ECF #12, pg. 30).   Further, although Ms. Woods is seeking disability insurance and social

---

[2]  It is also interesting to note that Dr. Ahn said he was unable to comment on whether his suggested limitations would be expected to last for at least twelve months.  (ECF #12, pg. 1005).

security coverage for a period beginning in 2006, she has received only sporadic and generally conservative mental health treatment and reported significant improvement when she participated in treatment. (ECF #12, pg. 34). Finally, Dr. Ahn opined that Ms. Woods' limitations are "extreme" in her ability to interact appropriately with other (e.g. public, supervisors, co-worker), although there is no evidence in the record to support such a finding. The ALJ pointed out that Ms. Woods herself testified that she was able to interact with others during daily activities and church services, she related adequately during multiple examinations and interviews, and her mood and anger issues had resolved in 2009 absent some moments of irritability, mostly directed at her family. There is no indication in the record that Ms. Woods was subjected to any medically acceptable clinical and laboratory diagnostic techniques that would have resulted in a social limitation of the degree suggested by Dr. Ahn. Therefore, not only does the record show substantial evidence to support the ALJ's treatment of Dr. Ahn's opinion on limitations as less than controlling, but the ALJ articulated all of the necessary information required to establish good reason for giving those opinions less than controlling weight.

For the reasons set forth above, Plaintiffs complaint, in so far as it alleges that the ALJ did not apply the appropriate legal standards when making his determination to disallow her disability benefits, is not well-taken. The ALJ followed all of the required steps and appropriately applied all legally established standards, including the deferential standard applied to treating source opinions, in his decision denying benefits to Ms. Woods.

Finally, after determining Ms. Woods' residual functional capacity, in accordance with the appropriate legal standards, the ALJ addressed the last step of the sequential evaluation process required under 20 C.F.R. 404.1520(g) and 416.920(g). This required a determination as to whether

Ms. Woods was capable of performing any work that exists in significant numbers in the national economy, considering her residual functional capacity, age, education, and work experience.  Based on the available evidence, the ALJ determined that although Ms. Woods is not capable of performing her past relevant work, and is not capable of performing a full range of light work, she is, nonetheless capable of performing some jobs that exist in significant numbers in the national economy.

II.  Substantial Evidence

The ALJ in this case found that Ms. Woods has the following "severe" impairments: "obesity, fibromyalgia, lumbar strain, degenerative disc disease, carpal tunnel syndrome and affective disorder, variously diagnosed as depressive disorder not otherwise specified, major depression and bipolar affective disorder."  The legal definition of "severe" in this instance means that these impairments, either individually or collectively, significantly limit Ms. Woods in her ability to perform basic work.  Having severe impairments, however, does not equate to a compensable disability.

There is substantial evidence to support the ALJ's findings that manipulative limitations were not necessary to address Ms. Woods' carpal tunnel syndrome.  In support of his findings, the ALJ cites an "EMG study of the claimant's bilateral upper extremities indicated mild right and minimal left median nerve neuropathy consistent with carpal tunnel syndrome."  (ECF #12, pg. 33).  Mild and minimal nerve neuropathy do not require strict limitations on manipulations.   The ALJ also found that although she may have had moderate difficulties in "concentration, persistence, or pace" these difficulties did not merit any specific limitations because Ms. Woods continued to be able to drive, was able to maintain adequate concentration and attention at consultative

examinations and at the hearing in this matter, and that she was able to respond to questioning without need for repetition of questions. (ECF #12, pg. 30, 36). Further, "clinical testing indicated no concentration deficits or was not conducted." (Id.). In addition, although Plaintiff claims that a recognized limitation to "superficial interactions" should have precluded more than "high-skill interactions such as negotiating and supervising, ALJ cited specific substantial evidence to suggest that her ability to maintain social interactions was not so severe as to warrant additional limitations. For example, he notes that Ms. Woods daily activities are only mildly restricted, that she is able to drive, shop, attend church, and attend her children's sporting events when she is physically able to do so. (Id.). In addition, the ALJ cites Dr. Smith's report, which noted that Ms. Woods' thinking was organized, that she was well oriented, and that she could remember and concentrate well. (ECF #12, at 36).

Further, the anger issues reported in connection with her alleged social limitations were directed mainly at family and there was no evidence that she had been unable to interact appropriately with others in any work or other public setting. She exhibited no difficulty with social interaction throughout any of her examinations or during the hearing process, and has sought mental treatment only sporadically. (ECF #12, pg. 30, 34-35). Multiple examiners also found that her impulse control imposed only mild limitations, that her mental impairment was not severe, that she had adequate concentration and attention to perform multi step tasks, and that despite some social functioning issues, she could perform simple and moderately complex tasks. (ECF #12, pg. 35-37). In addition, although she testified that her social functioning suffered due to depression and outbursts of anger, treatment for these issues has been generally conservative, and the treatment notes of her mental health examiners, including her own psychiatrist, indicated that her symptoms

improved or resolved with medication. (ECF #12, pg. 34, 35, 36).

To the extent that Ms. Woods' personal testimony indicates that her impairments were more severe, the ALJ found her not credible. Despite Plaintiffs' claims that the ALJ simply "reverse engineered" a credibility determination to discount any testimony not consistent with his decision, the ALJ actually gave multiple specific reasons why he discounted Ms. Woods' description of the severity and impact of her physical and mental limitations. These reasons provide substantial evidence in support of his findings and cannot be ignored simply because of the phrasing of a summary statement relating to his credibility findings. The ALJ after citing multiple physical tests, treatment notes, and diagnostic materials observed that Ms. Woods description of her limitations is not supported by the objective medical evidence presented in this case. (ECF #12, pg. 33-35). Further, her description of her own limitations varied significantly between her examinations and her testimony at the hearing. (ECF #12, pg. 33-37). In addition, her own written report of the daily activities she was able to accomplish during the relevant period indicates that she is capable of more than she testified she is able to do at the hearing. (ECF #12, pg. 37). Her credibility was also called into question because, despite her testimony that her physical limitations were severe, she did not consistently seek treatment, did not fully follow treatment plans provided by her health care providers, required only conservative treatment methods to obtain improvement, and suffered no major side effects from medication that was noted to provide significant relief from her symptoms when she was seeking and following treatment from her physicians. (ECF #12, pg. 32-37). Also the ALJ cited evidence that called into question Plaintiff's motivation to seek disability coverage, including inconsistent statements she provided regarding why her last employment actually terminated. This, in part, involved Ms. Woods claiming she that was not able to perform the work,

when it appears from the evidence that her termination may have had nothing to do with her health. (ECF #12, pg. 32).

Based on all of the information provided and painstakingly reviewed, explained, and cited by the ALJ, there is more than substantial evidence to support his finding that Ms. Woods is capable of performing a full range of light work with limitations on the degree of social interaction and complexity required by the task.  The vocational expert testified as to various jobs that exist in the national economy, and in great number in the Plaintiff's own state that satisfy these criteria. Therefore, the ALJ's decision, as upheld by the Commissioner of Social Security is supported by substantial evidence, applies all of the proper legal standards, and must be upheld.

CONCLUSION

Having reviewed the record, the Magistrate's Report and Recommendation, the briefs submitted by the parties, the full transcript of the proceedings before the Administrative Law Judge, and all of the applicable law, this Court finds that the Commissioner's denial of disability insurance benefits and supplemental social security income is supported by substantial evidence and is accordance with all applicable legal standards. The decision denying benefits is, therefore, affirmed, and this case is dismissed. IT IS SO ORDERED.

 /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  October 10, 2013